UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PATRICIA L. JENNINGS,

    Plaintiff,

vs.                                   Case No. 3:05-cv-348-J-HTS

JO ANNE B. BARNHART,
Commissioner of Social
Security,

    Defendant.
_____

## OPINION AND ORDER[1]

This cause is before the Court seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) under the Social Security Act. Administrative remedies have been exhausted and the case is properly before the Court.

Patricia L. Jennings filed her application for DIB dated December 22, 2000, alleging a disability onset date of December 5, 1995. Transcript of Administrative Proceedings (Tr.) at 71-76. Inability to work is based on fibromyalgia; osteopenia; migraine headaches; myofascial pain syndrome; neck, back, shoulder, muscle, wrist and arm pain; and flu-like symptoms. *Id.* at 83.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

After the application was denied initially and on reconsideration, Administrative Law Judge James R. Russell (ALJ) conducted a hearing on July 17, 2003.  Testimony was given by Plaintiff, who was represented by counsel.  In a Decision dated September 21, 2004, the ALJ found Ms. Jennings not disabled.  *Id.* at 15, 21, 22 (Finding 9).  The Appeals Council concluded no basis for review existed and the Commissioner's decision became final.

### Testimony from July 2003 Hearing

At the time of the hearing, Plaintiff was fifty-three years old.  She was married, had graduated from college, and subsequently completed a portion of a master's degree program.  Previously, Claimant had worked as a high school teacher, an administrative assistant, an associate manager, and a custom jeweler.

Following an automobile accident in 1994, Ms. Jennings developed fibromyalgia.  She suffers from frequent migraine headaches; face, neck, left-arm, chest, and back pain; trouble with concentration and memory; and emotional problems.

On a typical day, Plaintiff gets up between 8:00 a.m. and 11:00 a.m., prepares her breakfast, and watches the news.  After approximately fifteen to twenty minutes she turns off the television, then checks email and cares for her plants.  Claimant pays bills and does the grocery shopping.  Later, she has lunch and naps for about an hour.  Ms. Jennings attempts to clean part of

the house, such as the bathrooms and the kitchen. She also generally starts dinner.

## Standard of Review

"Disability" is defined in the Social Security Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[2]

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. § 405(g). "[F]actual findings are conclusive if . . . supported by 'substantial evidence,'" but the application of legal principles is examined "with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)); *see also Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993) ("[N]o

---

[2] The process involves five questions posed until a finding of disability is either precluded or mandated. The questions are as follows: (1) Is the claimant engaged in substantial gainful activity?; (2) If not, does the claimant suffer from a severe impairment?; (3) If yes, does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?; (4) If not, can the claimant perform his or her former work?; (5) If not, can he or she engage in other work of the sort found in the national economy? 20 C.F.R. § 404.1520 (a)-(g); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

presumption of validity attaches to the . . . determination of the proper legal standards to be applied in evaluating claims.").

Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "'If the Commissioner's decision is supported by substantial evidence, [the reviewing court] must affirm, even if the proof preponderates against it.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Phillips*, 357 F.3d at 1240 n.8); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (per curiam); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).  In determining whether substantial evidence supports a finding, portions of the transcript are not viewed in isolation, but are examined for their impact upon "the record as a whole." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). However, the existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## **Analysis**

Plaintiff asserts the ALJ "erred when he failed to find that [she] suffered from a severe mental impairment that would impact upon her ability to perform her past relevant work as a teacher[.]" Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #11; Memorandum) at 1, 5 (emphasis omitted).  It is contended this determination was not supported by substantial evidence.  *Id.* at 10.

"A severe impairment is one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.'" *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (quoting 20 C.F.R. § 416.924(c)).  "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).

"At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  Social Security Ruling 85-28.

The regulations provide:

> (b) *Basic Work Activities*.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include–
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

>   (2)   Capacities for seeing, hearing, and speaking;
>   (3)   Understanding, carrying out, and remembering simple instructions;
>   (4)   Use of judgment;
>   (5)   Responding appropriately to supervision, co-workers, and usual work situations; and
>   (6)   Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

The step two burden of proof is a threshold inquiry described as minimal. *See, e.g., Bridges v. Bowen,* 815 F.2d 622 (11th Cir. 1987) (per curiam); *Brady v. Heckler,* 724 F.2d 914 (11th Cir. 1984) (per curiam). The claimant's threshold burden has been defined as follows: "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Bridges,* 815 F.2d at 625 (quoting *Brady*, 724 F.2d at 920) (alteration in original); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002).

Here, the judge found Claimant's "fibromyalgia, L5-S1 disc bulging and mild foraminal narrowing, and temperomandibular joint (TMJ) dysfunction" were severe impairments. Tr. at 18; *see also id.* at 21 (Finding 3). The ALJ then proceeded to step three of the sequential analysis. Later in the Decision, he specifically found "she did not have a severe mental impairment for work[,]" stating:

> Her dysthymia did not impose more than minimal limitation upon her ability to work. Dr. [Sherry V.] Risch noted that the claimant could have experienced some problems with reliability and predictability, but this was due to

> her physical complaints rather than a mental condition. Further, finding the claimant's dysthymia as nonsevere is also supported by the fact that she never sought or received any mental health treatment and by her reported activities of daily living.

*Id.* at 19; *see also id.* at 20. He utilized the Psychiatric Review Technique Form to make his determination. *See id.* at 19. In addition, the mental assessment from the non-examining mental health professional was discussed. *Id.* at 20. The judge did not refer to other mental health records in the Decision, stating "the remainder of the medical evidence contained in the claimant's file pertains to her condition in the years of 2002, 2003, and 2004. Thus, it is not indicative of the claimants disability status on or before her date last insured, December 31, 2001." *Id.* at 18.

Plaintiff asserts that, in his analysis, the ALJ "ignored Dr. Risch's diagnosis of Pain Disorder Associated with Both Psychological Factors and a Medical Condition." Memorandum at 10. While it is correct Ms. Jennings was diagnosed with this condition, she has failed to point out any functional limitations associated therewith that would not be encompassed by the severe impairments the ALJ did find. Specifically, she was determined to have the severe impairment of fibromyalgia, which is

> a type of chronic pain syndrome affecting the soft tissues, which may, as cause or effect, involve some sort of psychological disorder or an abnormal response to stress. Typically patients describe deep aching, throbbing, or a burning feeling, and they may feel totally drained of energy. . . . The picture of FM often includes trouble sleeping deeply, headaches, chest pains, dizziness, and symptoms of "irritable bowel."

6 *Attorneys' Textbook of Medicine*, ¶ 25.01 (Roscoe N. Gray, M.D. & Louise J. Gordy, M.D., LL.B., eds., 3d ed. 2005) (footnote omitted).  Thus, the ALJ did not err in failing to make reference to the aforementioned "Pain Disorder" in his discussion of Plaintiff's severe impairments.

Additionally, Defendant asserts that, "The ALJ . . . found in Plaintiff's favor at step two, and the specific impairments included in his step two finding are irrelevant."  Memorandum in Support of the Commissioner's Decision (Doc. #14; Opposition) at 8. Indeed, though Ms. Jennings's argument centers around the step two determination, the judge concluded she had severe impairments and proceeded with the subsequent portions of the sequential evaluation process.  At step two a claimant must merely "prove that she has a severe impairment or combination of impairments." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  This "is all that is required at step two." *Council v. Comm'r of Soc. Security*, No. 04-13128, slip op. at 4, 127 Fed.Appx. 473 (11th Cir. 2004) (Table) (per curiam); *see* slip opinion, attached to the Opposition.

It seems Ms. Jennings's core complaint is that the judge should have concluded she could not perform her past relevant work in light of her mental condition.  However, upon review, there is substantial evidence to support the ALJ's conclusion.  In

determining the dysthymia[3] would "not impose more than minimal limitation upon . . . ability to work[,]" the judge discussed the evidence from Dr.Risch, the lack of mental health treatment in the record, and Plaintiff's reported daily activities.  Tr. at 19.

Dr. Risch examined Ms. Jennings on July 31, 2001, following a referral from the Department of Health.  *Id.* at 326.  The psychologist found Ms. Jennings to have average intellect, no problems with memory, and good mental control.  *Id.* at 329.  Additionally, despite diagnoses of dysthymia and pain disorder, Plaintiff had "the cognitive abilities with which to learn in a multitude of settings[,]" was deemed "able to follow job directives and rules[,]" and had "appropriate interpersonal skills[.]" *Id.* The only deficits in functioning were that she might "have problems interacting in complex social systems" or become overwhelmed in the same, and "would be of poor reliability and predictability secondary to her multiple health complaints."  *Id.*[4]  As a whole,

---

[3] Dysthymia is "[a] disorder of the mood, less severe than a major depression, marked by a loss of interest in activities previously enjoyed, described by the patient as a feeling of being in the dumps, and lasting more than two years."  2 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine and Word Finder* at D-247 (2005).

[4] Read in context, it appears the phrase "multiple health complaints" as used by Dr. Risch refers to Plaintiff's numerous physical maladies.  *See id.* at 329.  This is consistent with the ALJ's finding.  *See id.* at 19.  Further, it does not appear the judge rejected this evidence.  In fact, his analysis relies upon it, at least in part.  *See id.*  Rather, he rejected the reports from non-examining psychologist Janice H. Miller, which appear as Exhibit Nos. 12F and 13F.  *See id*. at 330-47; *see also id.* at 20 (stating the judge had "considered the assessments of the State Agency medical consultants in Exhibits 8F and 12F through 14F" and did "not accept the mental assessment").

these findings support the judge's conclusion that her mental impairments would not severely affect her ability to work.

According to her testimony, Plaintiff's daily activities include watching television, using the computer, performing housework, grocery shopping, and paying bills. *Id.* at 531. She also tends to her plants and does some cooking. *Id.* at 531-32. In addition, she reported having done some traveling, with at least one long car trip. *Id.* at 273. When asked about her ability to teach, Ms. Jennings stated she was "a little concerned about being able to project [a] sense of fluency and confidence [in French or Spanish] to the kids when [she was] not sure of [her] native language."[5] *Id.* at 538. She had never been treated by a mental health professional and said it had never been recommended to her. *Id.* at 539. Finally, Claimant reported owning and working at a vending machine business during the period of disability. *See id.* at 167, 173, 175. This continued after the date last insured. *See id.* at 417.

In light of the foregoing, substantial evidence supports the finding that Plaintiff's mental impairments were not severe

---

[5] The Commissioner points out that on her initial application for benefits, Claimant did not include any mental condition as limiting her ability to work. *See* Opposition at 10-11; *see also id.* at 83.

such that they would prevent her from returning to her past relevant work.[6]

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision, and thereafter to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of February, 2006.

/s/       Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and *pro se* parties, if any

---

[6] Ms. Jennings does not take issue with the judge's conclusions regarding her pain and other complaints.